UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISATU VILLE,<br><br>Plaintiff,<br><br>v.<br><br>FIRST CHOICE IN HOME CARE,<br><br>Defendant. | CASE NO. C17-0548JLR<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Before the court is Defendant First Choice In-Home Care's ("First Choice") motion for summary judgment. (MSJ (Dkt. # 31).) Plaintiff Isatu Ville opposes the motion. (*See* Resp. (Dkt. # 43).) Ms. Ville was represented by counsel at one point, but is now proceeding *pro se*. (*See* Mot. to Withdraw (Dkt. # 22); Order (Dkt. # 24).) The court has examined the motion, the relevant portions of the record, and the applicable

//

//

law. Being fully advised,[1] the court GRANTS First Choice's motion and DISMISSES this case with prejudice for the reasons set forth below.

## II. BACKGROUND

Ms. Ville was employed by First Choice as a homecare aide from November 3, 2015, to July 25, 2016. (Compl. (Dkt. # 5) at 2; Answer (Dkt. # 10) ¶¶ 3-4.) Ms. Ville served as a homecare aide for a number of different clients while employed by First Choice. (*See* Compl., Ex. 1 (Dkt. # 5-1) at 20-27.) A standard workweek for First Choice employees is Sunday through Saturday. (Lord Decl. (Dkt. # 33) ¶ 1.) When an employee works more than 40 hours in a standard workweek, that employee is paid overtime wages at time and one-half for each hour over 40 hours. (*Id.*) First Choice "makes every effort to mitigate overtime hours" because it cannot bill Medicaid through the Washington State Department of Social and Health Services for overtime wages. (*Id.* ¶¶ 2, 4.) In other words, First Choice is "100% responsible for covering the cost of the half time pay received by the employee working overtime." (*Id.* ¶ 4.) First Choice requires that its employees first receive authorization before working overtime. (*Id.* ¶ 2.) However, a homecare aide who works unauthorized overtime is still entitled to wages at time and one-half. (*Id.*)

From Sunday, July 17, 2016, through Friday, July 22, 2016, Ms. Ville worked 39 hours. (Bigby Decl. (Dkt. # 32) ¶ 1, Ex. 1 at 1-8.) The parties disagree about whether

---

[1] The parties do not request oral argument on the motion (*see* MSJ at 1; Resp. at 1), and the court determines that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

Ms. Ville was originally scheduled to work for client N.H. on Saturday, July 23, 2018. (*See* 6/15/2018 Letter (Dkt. # 28) at 9 (letter from Ms. Ville explaining that she was working her "regular shift" on July 23, 2016); Gaviglio Decl. (Dkt. # 34) ¶¶ 1-3 (First Choice explaining that Ms. Ville no longer worked a Saturday shift for N.H.).) Both parties agree, however, that on July 22, 2016, Brenda Jackson, a Senior Direct Care Supervisor at First Choice, called Ms. Ville and instructed her to not work for N.H. on July 23, 2016. (*See* Gaviglio Decl. ¶ 3; Bigby Decl. ¶ 4, Ex. 4 ("Ville Dep.") at 33:11-21; Compl. at 2-3.)

At 9:23 a.m. on July 23, 2016, Angel Gaviglio, a Direct Care Supervisor with First Choice, received a phone call from John Clark, a First Choice caregiver who was at N.H.'s residence and who was scheduled to work with N.H. from 8:00 a.m. to 1:00 p.m. that day. (Gaviglio Decl. ¶ 4; Lord Decl. ¶ 3.) Mr. Clark informed Ms. Gaviglio that Ms. Ville had arrived at N.H.'s residence at 8:00 a.m. intending to complete a work shift. (Gaviglio Decl. ¶ 4; *see also* Bigby Decl., Ex. 1 at 1; Compl. at 3.) Ms. Gaviglio immediately called Ms. Ville on her cell phone to instruct her to leave the premises, but the call went to voicemail. (Gaviglio Decl. ¶ 4.) Ms. Gaviglio eventually reached Ms. Ville on N.H.'s home phone shortly before 10:00 a.m., and instructed her to leave the premises. (*Id.* ¶ 5.) Ms. Ville responded that she would not leave unless the directive was put in writing. (*Id.*; Compl. at 3; Ville Dep. at 36:3-18.) Ms. Gaviglio called Ms. Ville back shortly after 10:00 a.m., and instructed her that, if she did not leave N.H.'s residence, then Ms. Gaviglio would call the police. (Gaviglio Decl. ¶ 6.) At 10:30 a.m., Ms. Jackson called Ms. Ville and directed her to leave to N.H.'s home. (*Id.* ¶ 7.) Ms.

Ville again refused. (*Id.*) At 10:36 a.m., Ms. Gaviglio called the police and requested assistance in removing Ms. Ville from N.H's premises. (*Id.*; Compl. at 3.) At 11:44 a.m., Ms. Gaviglio received confirmation from the police that Ms. Ville had been removed. (Gaviglio Decl. ¶ 7; Bigby Decl., Ex. 1 at 1.)

On July 25, 2016, Ms. Ville met with Ms. Gaviglio, Ms. Jackson, and T.J. Ford, First Choice's Director of Human Resources. (Gaviglio Decl. ¶ 8; Compl. at 4.) First Choice claims that it entered this meeting intending to retain Ms. Ville, in part because there is a shortage of eligible homecare aides in Washington. (Lord Decl. ¶ 6.) However, according to First Choice, at the meeting Ms. Ville refused to take responsibility for her July 23, 2016, actions and represented that she would continue to disregard company directives. (Gaviglio Decl. ¶ 8.) Ms. Ville states that, at the meeting, she refused to sign a "warning for insubordination" and "paperwork about having sole responsibility of (sic) the police being contacted." (Compl. at 4.) Ms. Ville's employment was terminated after this meeting. (Bigby Decl. ¶ 2, Ex. 2 ("Termination Letter").) First Choice's termination letter states that Ms. Ville was fired as a "result of insubordination and refusing to abide by First Choice In-Home Care's policies and procedures." (*Id.*)

Ms. Ville filed a complaint with the EEOC, which was dismissed on March 16, 2017, after the EEOC determined that it was "unable to conclude that the information obtained establishes violations of the statutes." (Compl., Ex. 1 at 1.) Ms. Ville filed the present case on April 10, 2017, alleging employment discrimination based on race, sex, color, and national origin, as well as retaliation. (*See* Dkt.; Compl. at 2.; *see also* Ville Dep. at 24:13-17.) Ms. Ville is a black female who was born in Sierra Leone. (Compl. at

4.) Ms. Ville argues in part that Mr. Clark, who is a white American male, was allowed to work overtime hours for N.H. while Ms. Ville was denied this opportunity. (*See* Resp. at 5.) First Choice explains that Mr. Clark was N.H.'s primary caregiver, which is a role "based on the length of time the caregiver has been assigned to the client, the caregiver's ability to provide task training to other assigned caregivers, and the number of monthly hours the caregiver is providing to that client." (Lord Decl. ¶ 3.) Mr. Clark worked with N.H. from December 2014 until October 2017, when N.H. passed away. (*Id.*) As N.H.'s primary caregiver, Mr. Clark was given the majority of N.H.'s caregiver hours and overtime hours when necessary, though he still needed permission from a Direct Care Supervisor before working overtime. (*Id.*; MSJ at 8.)

On August 1, 2018, First Choice filed this motion for summary judgment on all of Ms. Ville's allegations, claiming that, as a matter of law, Ms. Ville cannot prove that First Choice discriminated or retaliated against her. (*See* MSJ at 6.) Ms. Ville responded on September 7, 2018. (*See* Resp.) The court now addresses the motion.

### III. ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a

matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the nonmoving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

In determining whether the fact-finder could reasonably find in the nonmoving party's favor, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The court may only consider admissible evidence when ruling on a motion for summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-75 (9th Cir. 2002). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003).

//

**B.  Discrimination**

Ms. Ville alleges four kinds of discrimination: (1) disparate treatment based on race; (2) disparate treatment based on color; (3) disparate treatment based on national origin; (4) and disparate treatment based on sex. (*See* Compl. at 2; *see also* Ville Dep. at 24:13-17.) Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Similarly, under the Washington Law Against Discrimination ("WLAD"), it is an unfair practice for an employer to discharge or discriminate against any person in compensation or in other terms or conditions of employment because of "sex . . . , race, creed, color, [or] national origin." RCW 49.60.180(2)-(3).

Courts use the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to analyze discrimination claims under Title VII and WLAD. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006); *Kouame v. DAL Global Servs.*, 292 F. Supp. 3d 1154, 1160 (W.D. Wash. 2018) (citing *Hill v. BCTI Income Fund-I*, 23 P.3d 440, 445-46 (Wash. 2001)). The *McDonnell Douglas* analysis has three components. *McDonnell Douglas*, 411 U.S. at 802-04. First, the plaintiff must present a *prima facie* case of discrimination. *Id.* at 802. Second, if the plaintiff succeeds in presenting a *prima facie* case, there is rebuttable presumption of discrimination and the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Robinson v. Pierce Cty.*,

539 F. Supp. 2d 1316, 1326 (W.D. Wash. 2008) (citing *McDonnell Douglas*, 411 U.S. at 802). And third, if the employer presents a legitimate, nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff to show that the employer's reason is merely pretext for unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 804.

A plaintiff's burden at this stage is one of "production, not persuasion," which may be proved through direct or circumstantial evidence. *Scrivener v. Clark Coll.*, 334 P.3d 541, 545 (Wash. 2014); *Cornwell*, 439 at 1030. Summary judgment is not appropriate in discrimination cases "if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's" membership in a statutorily protected class. *Scrivener*, 334 P.3d at 545; *Cornwell*, 439 F.3d at 1028. But where "the plaintiff has produced no evidence from which a reasonable jury could infer that an employer's decision was motivated by an intent to discriminate, summary judgment is entirely proper." *Kuyper v. State*, 904 P.2d 793, 797 (Wash. Ct. App. 1995).

1. *Prima Facie* Discrimination Case

Under the first *McDonnel Douglas* component, Ms. Ville must present a *prima facie* case of discrimination. 411 U.S. at 802. To do so, Ms. Ville must prove that: (1) she belongs to a protected class of persons; (2) she performed her job satisfactorily, was qualified, and met the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) First Choice treated her differently than a similarly situated employee who does not belong to the same protected class. *See Cornwell*, 439 F.3d at 1028; *Flowers v. Crouch–Walker Corp.*, 552 F.2d 1277, 1282-83 (7th Cir. 1977);

*Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1093-94 (9th Cir. 2005). The inquiry is similar for all of Ms. Ville's employment discrimination claims. *See Cornwell*, 439 F.3d at 1028; *see also Lusk v. Senior Servs.*, No. C12-0733MJP, 2013 WL 2634946, at *5-7 (W.D. Wash. June 12, 2013) (analyzing plaintiff's sex discrimination, race discrimination, and national origin claims under the standard articulated in *Cornwell*). The degree of proof required to establish a *prima facie* case is "minimal and does not even need to rise to the level of a preponderance of evidence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citation omitted). Despite this low burden of proof, Ms. Ville's discrimination claims all fail because she cannot establish the second element of a *prima facie* case.

Both parties agree that Ms. Ville was terminated after she repeatedly ignored First Choice's instructions not to work a shift at N.H.'s residence on July 23, 2016. Because Ms. Ville ignored these instructions, First Choice had to call the police to remove her from N.H.'s home. First Choice actually intended to retain Ms. Ville after this incident. (*See* Lord Decl. ¶ 6.) Ultimately, however, First Choice fired Ms. Ville because she refused to acknowledge that she had violated company policy, and she represented that she would continue to disregard company directives. (*Id.*)

Ms. Ville has not presented any opposing evidence. Rather, without contradicting First Choice's recitation of the facts, Ms. Ville repeatedly claims that she "did nothing wrong," (*see* Resp. at 2, 4), and that it is her "right" to ignore First Choice's instructions if they are not provided in writing (*see id.* at 11; *see also* Ville Dep. at 36:15-24 ("I have a right to demand that [First Choice put instructions in writing]. It is my right, if you hire

me with a reason, you need a reason to tell me to leave. And I have the right to ask you to put it in writing. . . . It is the law, and I know I have that right.").) Nor has Ms. Ville provided evidence that she was performing her job satisfactorily, such as a performance review. (*See generally* Dkt.) Although Ms. Ville provides a note from N.H.'s mother, the note only explains the schedule of N.H.'s homecare aides and that N.H.'s mother did not want First Choice to send the police to her home. (*See* 3/1/18 Letter (Dkt. # 25) at 6.) The note says nothing about Ms. Ville's job performance. (*See id.*) Moreover, at the time she was fired, Ms. Ville had only worked with First Choice for eight months. (*See* Lord Decl. ¶ 8.) This is too short a tenure to bolster Ms. Ville's claim that she was performing her job satisfactorily. *Cf. Kouame*, 292 F. Supp. 3d at 1161 (discussing that an employee's nine-year tenure with a company is proof of satisfactory job performance for purposes of proving a *prima facie* case).

      In total, the court finds that there is no genuine dispute of material fact that Ms. Ville was not performing her job adequately and that her actions fall below the "legitimate expectations of the employer." *See Walia v. Potter*, No. C09-1188JLR, 2013 WL 392647, at *3 (W.D. Wash. Jan. 30, 2013). Ms. Ville has therefore failed to prove a *prima facie* case of discrimination, and First Choice entitled to summary judgment.[2]

//

//

---

[2] Because Ms. Ville failed to establish the second element of a *prima facie* case of employment discrimination, the court does not reach First Choice's argument that Ms. Ville was not treated differently than a similarly situated employee who does not belong to the same protected class. (Mot. at 8; Resp. at 4-5.)

### 2. Legitimate, Nondiscriminatory Reasons for Termination

Even if Ms. Ville could establish a *prima facie* case of discrimination, her claims would still fail because First Choice has come forward with more than enough evidence to establish a "legitimate, nondiscriminatory reason" for her termination that Ms. Ville has not shown is pretext. *Cornwell*, 439 at 1028; *see infra* § III.B.3. Specifically, First Choice presented evidence that Ms. Ville was terminated as a "result of insubordination and refusing to abide by First Choice In-Home Care's policies and procedures." (Termination Letter; *see also* Gaviglio Decl. ¶ 8; Lord Decl. ¶ 6.) First Choice's stated reasons are legitimate, nondiscriminatory reasons for dismissing an employee. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (listing "inadequate work performance" and "behavior not in accordance with customary business practices" as legitimate, nondiscriminatory reasons for dismissing an employee). The court finds that First Choice has met its burden of producing a legitimate, nondiscriminatory reason for dismissing Ms. Ville.

### 3. Pretext

The burden therefore shifts back to Ms. Ville to present sufficient evidence to create a genuine dispute of material fact that (1) First Choice's stated reasons for discharge are merely a pretext for discrimination, or (2) that although First Choice's stated reasons are legitimate, discrimination nevertheless was a "substantial factor" motivating First Choice. *See Scrivener*, 334 P.3d at 546. Ms. Ville does not need to prove that First Choice's sole motivation was discriminatory, but rather that discrimination was a substantial factor in her dismissal. *Id.* Ms. Ville can meet this

ORDER - 11

burden through either direct or circumstantial evidence. *Id.* at 545. Here, however, Ms. Ville has not provided any evidence that race, color, national origin, or sex played a substantial factor in her dismissal.

First, she has not presented any direct evidence of First Choice's discriminatory intent, such as a First Choice manager or supervisor making negative comments about her membership in a protected class. *See Kouame*, 292 F. Supp. 3d at 1162. Likewise, she has not provided evidence of a company policy to withhold overtime hours to a protected class that she belongs to. *Id.*

In contrast, First Choice compiled statistical evidence to show that it does not discriminate against its employees in granting overtime hours. It is well established that statistics can be useful in employment discrimination cases, in part because large statistical disparities can help establish a pattern or practice of discrimination, or enable the court to draw an inference of pretext. *See Penk v. Or. State Bd. of Higher Educ.*, 816 F.2d 458, 462-63 (9th Cir. 1987) (citations omitted). Here, First Choice had 726 employees in King County, Washington during Ms. Ville's eight-month tenure with the company. (Lord Decl. ¶ 7, Ex. 1 (Dkt. # 33-1).) Of those employees, 14% were unspecified as to race or gender; 70% were female; 14% were male; 33% were African American; and 29% were Caucasian. (*Id.*) Around one-third of First Choice's employees received overtime hours during this time period. (*Id.*) Of the employees that received overtime, 20% were unspecified as to race or gender; 63% were female; 16% were male; 22% were African American; and 36% were Caucasian. (*Id.*) Only 8% of the employees who received overtime were Caucasian males. (*Id.*) Although the court notes

that there is some statistical disparity between First Choice's general employee demographics and the demographics of the employees that receive overtime, the court does not find that this disparity is "significant or actionable." *See Penk*, 816 F.2d at 464; *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 337 (1977) (finding that statistical evidence bolstered a *prima facie* case of discrimination where, in a company with over 6000 employees, 83% of the African American employees held lower paying jobs, whereas only 39% of nonminority employees held these jobs). Moreover, the ultimate burden of persuasion remains on Ms. Ville to establish pretext, *see Martinez v. Oakland Scavenger Co.*, 680 F. Supp. 1377, 1394 (N.D. Cal. 1987) (citing *Teamsters*, 431 U.S. at 336), and she has not attempted to refute First Choice's statistics or offer a different narrative (*see generally* Resp.). The court finds that these statistics do not reveal that Ms. Ville's termination was simply pretext for unlawful discrimination.

Lacking direct evidence, the court looks to circumstantial evidence. Ms. Ville, however, has not presented any. (*See generally* Dkt.) At most, Ms. Ville offers the conclusory remark: "I believe Defendant discriminated against me due to race (black)[,] African national origin (Sierra Leone)[,] sex (female)[.]" (Resp. at 8 (nonconforming capitalization altered).) Ms. Ville does not support this statement with any evidence. (*See generally* Resp.; Dkt.) Moreover, Ms. Ville's claim is belied by the fact that First Choice intended to retain her after the incident, firing her only after Ms. Ville represented that she would continue to disregard company policies and directives. In other words, Ms. Ville's claim is precisely the type of conclusory allegation "unsupported by factual data [that] cannot defeat summary judgment." *Rivera*, 331 F.3d at 1078.

In sum, Ms. Ville has not presented sufficient evidence to create a genuine issue of material fact that First Choice's articulated reason for her termination—insubordination and refusing to abide by First Choice In-Home Care's policies and procedures—was pretextual or that discrimination was a substantial motivating factor in her termination. The court therefore GRANTS summary judgment to First Choice on this claim.

## C. Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she was engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Lodis v. Corbis Holdings, Inc.*, 292 P.3d 779, 786 (Wash. Ct. App. 2013); *Walia*, 2013 WL 392647, at *5 (citing *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 646 (9th Cir.2003)). "If a plaintiff is able to establish a *prima facie* case, the burden shifts to the employer to provide a legitimate, non-retaliatory explanation for the employment action." *Walia*, 2013 WL 392647, at *5 (citing *Bergene v. Salt River Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir.2001)). If the employer satisfies its burden, the burden shifts back to the employee to show that the employer's explanation is merely a pretext for unlawful retaliation. *Id.*

Pursuant to WLAD, there are two statutorily protected activities in the context of retaliation: (1) when an employee opposes practices forbidden by WLAD; or (2) when an employee files a charge, testifies, or assists in a proceeding. *See* RCW 49.60.210(1). Under federal law, retaliation is unlawful when an "employee has filed any complaint or instituted" a proceeding. 29 U.S.C. § 215(a)(3). The only protected activity that Ms.

Ville has alleged is the filing of her EEOC complaint, which the EEOC dismissed on March 16, 2017, after it was "unable to conclude that the information obtained establishes violations of the statutes." (*See* Compl., Ex. 1 at 1.) Ms. Ville, however, did not file this complaint until after she was dismissed by First Choice. Therefore, Ms. Ville cannot prove the third element of a *prima facie* case that "there is a causal connection between the protected activity and the adverse action." *See Lodis*, 292 P.3d at 786.

Moreover, even assuming that Ms. Ville can establish a *prima facie* case of retaliation, Ms. Ville's claim still does not survive summary judgment. For the reasons explained above, First Choice has provided a legitimate, nondiscriminatory reason for firing Ms. Ville—she repeatedly refused to follow First Choice's policies and procedures, and represented that she would continue to disregard company directives in the future—and Ms. Ville has not provided sufficient evidence to raise a genuine dispute of material fact regarding pretext. *See supra* § III.B.2-.3. The court therefore GRANTS summary judgment to First Choice on this claim.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS First Choice's motion for summary judgment (Dkt. # 31) and DISMISSES this case with prejudice.

Dated this 12th day of October, 2018.

JAMES L. ROBART
United States District Judge